Mohammed A. BASTANIPOUR,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 92–1010.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1992.
Decided Dec. 7, 1992.

David Rubman (argued); and Susan Schreiber, Travelers & Immigrants Aid of Chicago, Chicago, Ill., for petitioner.

Fred Foreman, U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, Ill.; William J. Howard, David J. Kline, Anthony W. Norwood (argued), Department of Justice, Office of Immigration Litigation; Richard L. Thornburg, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, D.C.; and A.D. Moyer, I.N.S., Chicago, Ill., for respondent.

Before POSNER and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

Mohammed Ali Bastanipour was born in Iran in 1944, came to the United States in 1974 to study, and became a permanent resident of this country in 1978. An accountant for Price Waterhouse, Bastanipour returned to Iran in 1979 for reasons that remain obscure. He flew back to the U.S. from Teheran in 1980—and upon arrival at O'Hare Airport in Chicago was promptly arrested for possession of almost nine pounds of heroin concealed in jars of caviar that he had brought back with him from Iran. We affirmed his conviction of violating federal narcotics laws in *United States v. Bastanipour*, 697 F.2d 170 (7th Cir.1982). Upon his release from prison in 1988 after serving almost nine years of his fifteen-year sentence, the Immigration and Naturalization Service began deportation proceedings. An immigration judge ordered Bastanipour deported to Iran. The Board of Immigration Appeals affirmed, rejecting Bastanipour's claims for political asylum and, in the alternative, for withholding of deportation. We have stayed his deportation pending this decision on his petition for review.

The Attorney General (here operating through his delegate, the Board of Im-

migration Appeals) may in his discretion grant political asylum to an alien who has a well-founded fear that should he be returned to his homeland he will suffer persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Immigration and Nationality Act, §§ 101(a)(42)(A), 208(a), 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). A recent amendment forbids the granting of asylum to an alien who has committed an aggravated felony, as Bastanipour has, but the amendment does not apply to applications for asylum filed before November 29, 1990, as Bastanipour's was. Immigration Act of 1990, §§ 515(a)(1), (b)(1), 8 U.S.C. § 1158(d).

Bastanipour argues that the Board committed a clear error in finding that he did not have a well-founded fear of persecution should he be deported to Iran. The Board replies that the argument is moot because the Board had an independent alternative ground for denying his request for asylum: even if he had a well-founded fear of persecution, the Board would refuse to exercise its discretion favorably to him. We do not agree that the alternative ruling on discretion moots Bastanipour's challenge to the finding that he has no well-founded fear of persecution. The Board gave no reason for its contingent refusal to exercise discretion. All it said was: "We also find that the request for asylum should be denied in the exercise of discretion." A bare conclusion is not an adequate discharge of an administrative agency's responsibilities unless the ground or argument that it is rejecting is frivolous. See *Bowen v. American Hospital Ass'n,* 476 U.S. 610, 626–27, 106 S.Ct. 2101, 2112, 90 L.Ed.2d 584 (1986) (plurality opinion); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Schurz Communications, Inc. v. FCC,* 982 F.2d 1043, 1049–50 (7th Cir.1992), and *International Union, UAW v. NLRB,* 802 F.2d 969, 972 (7th Cir.1986), for the general principle, and *Shahandeh–Pey v. INS,* 831 F.2d 1384, 1389 (7th Cir.1987); *Achacoso–Sanchez v. INS,* 779 F.2d 1260, 1265 (7th Cir. 1985); *Zamora–Garcia v. INS,* 737 F.2d 488, 490–91 (5th Cir.1984); *Santana–Figueroa v. INS,* 644 F.2d 1354, 1357 (9th Cir.1981), and *Wong Wing Hang v. INS,* 360 F.2d 715, 719 (2d Cir.1966) (Friendly, J.), for its application to decisions by the Board of Immigration Appeals. The case is unlike *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (per curiam), where the Supreme Court held that the Board of Immigration Appeals could properly base denial of relief on discretionary grounds and skip the issue of statutory eligibility. The problem here is that the Board gave no reasons for its discretionary determination.

The Board did, it is true, give reasons for denying discretionary relief under section 212(c) of the Act, 8 U.S.C. § 1182(c), Bastanipour's alternative ground for relief from deportation. That section of the Act, as interpreted by the Board and the courts, requires a balancing of equities. *In re Marin,* 16 I & N Dec. 581, 584–85 (BIA 1978); *In re Buscemi,* 19 I & N Dec. 628, 633–34 (BIA 1978); *Shahandeh–Pey v. INS, supra,* 831 F.2d at 1387–88. In striking the balance against Bastanipour the Board assumed that he lacked a well-founded fear of persecution. As it did not discuss how the balance might incline if he had such a fear, its resolution of the section 212(c) issue does not fill the gap left by its failure to discuss the issue of discretion under the asylum provision. Bastanipour argues that if he is deported to Iran he may be summarily executed for having converted from Islam to Christianity, a capital offense under Islamic religious law. We may assume without deciding that the Board of Immigration Appeals could in the exercise of its discretion to grant or deny political asylum take the position that it will send Bastanipour to his death for the crime of becoming a Christian rather than grant asylum to a drug felon. But we will not infer that this is the Board's position from the single sentence quoted above.

The principal issue on this appeal is, then, whether Bastanipour has a well-

founded fear of persecution by the Iranian authorities. We may set to one side his argument that he faces persecution as a drug trafficker—a type of offender who in present-day Iran is punishable by death frequently administered after summary proceedings that would be regarded in this country as a travesty of due process of law. Although we can find no case on point, cf. *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1575 n. 6 (9th Cir.1986), we have no doubt that drug traffickers are not the sort of "particular social group" to which the provision on asylum refers. The background of this term, explored at length in *Ananeh–Firempong v. INS*, 766 F.2d 621, 626–28 (1st Cir.1985), and *Sanchez–Trujillo v. INS, supra,* 801 F.2d at 1575–77, shows that it designates discrete, relatively homogeneous groups targeted for persecution because of assumed disloyalty to the regime—a good example being the *kulaks* (affluent peasants) whom Stalin starved and exiled in the 1930s. Whatever its precise scope, the term "particular social groups" surely was not intended for the protection of members of the criminal class in this country, merely upon a showing that a foreign country deals with them even more harshly than we do. A contrary conclusion would collapse the fundamental distinction between persecution on the one hand and the prosecution of nonpolitical crimes on the other. *Khalaf v. INS*, 909 F.2d 589, 591–92 (1st Cir.1990); *MacCaud v. INS*, 500 F.2d 355, 359 (2d Cir.1974). We suppose there might be an exception for some class of minor or technical offenders in the U.S. who were singled out for savage punishment in their native land, but a drug felon sentenced to thirty years in this country (though Bastanipour's sentence was later reduced to fifteen years) cannot be viewed in that light.

But of course Christians, like members of other religious groups, are a protected class and we must consider whether Bastanipour has a well-founded fear of persecution on account of his Christianity. On this critical question the reasoning in the Board's opinion is radically deficient. After reciting various facts or pseudo-facts bearing on the question, including that Bas-

tanipour has never been baptised or formally joined a church, that he had requested a pork-free diet in prison, and that apostasy though a capital offense under Muslim religious law is not the subject of a specific prohibition in the Iranian penal code, the opinion concludes that Bastanipour "has not established that he has in fact converted to Christianity"—and that anyway there is no hard evidence that Iran has executed anyone for converting to Christianity, except for a man who became a Christian minister; and "we note that the respondent [Bastanipour] does not claim to be a Christian religious leader." (Do we detect a sarcastic note?) All things considered, the Board concluded, Bastanipour's fears are speculative—why, Iran might not even discover that he *is* a Christian.

This is poorly reasoned, and not only because Bastanipour requested the pork-free prison diet before he turned to Christianity. The opinion does not consider what would count as conversion in the eyes of an Iranian religious judge, which is the only thing that *would* count so far as the danger to Bastanipour is concerned. The offense in Muslim religious law is apostasy—abandoning Islam for another religion. Thomas Patrick Hughes, "Apostasy from Islam," in Hughes, *A Dictionary of Islam* 16 (1895). That is what Bastanipour did. He renounced Islam for Christianity. He has not been baptised or joined a church but he has made clear, to the satisfaction of witnesses whom the Board did not deem discredited, that he believes in Christianity rather than in Islam—and *that* is the apostasy, not compliance with formalities of affiliation. Whether Bastanipour believes the tenets of Christianity in his heart of hearts or, as hinted but not found by the Board, is acting opportunistically (though at great risk to himself) in the hope of staving off deportation would not, we imagine, matter to an Iranian religious judge. The Board might have taken the position that an insincere profession of faith is not a ground for asylum no matter what danger the profession places the applicant in. It might have said that a nonbelieving Christian is not *really* a Christian

and thus does not fall within the scope of the asylum statute. But there is no mention of such a ground for denying Bastanipour's application; and the Board did not make a finding that he is insincere.

The Board's statement that the Iranian penal code fails to mention apostasy was based on advice by the State Department, but may be erroneous. Nader Entessar, "Criminal Law and the Legal System in Revolutionary Iran," 8 *Bost. Coll. Third World L.J.* 91, 97 (1988), states that the Iranian penal code codifies the prohibitions of Islamic religious law, expressly including the prohibition against apostasy. But, more important, the State Department went on to say that "were [Bastanipour] to be charged before a Sharia (religious) court in Iran of the crime of apostasy, we believe that he could face very serious punishment if convicted, quite possibly death." The important thing is not what is written in the penal code but the fact that in Iran people receive temporal punishment, including death, for violating the tenets of Islamic law; and apostasy from Islam is indeed a capital offense under that law. Hughes, *supra*, at 16. The Board's handling of the question of apostasy makes us wonder whether the Board's knowledge of Iran is any greater than its knowledge of Biafra, about which we commented critically in *Osaghae v. INS*, 942 F.2d 1160, 1163 (7th Cir.1991). As for the suggestion that the Iranian authorities may not discover Bastanipour's apostasy, we note that the INS apparently makes no effort to conceal its deportation and asylum proceedings from foreign states, *id.;* that Iran is known to have a file on the Bastanipour family because of the political activities of Bastanipour's brother (see below); and that Bastanipour could conceal his apostasy only by refusing to practice his Christianity in public—for, given his Muslim name (Muhammed Ali), anyone who observed him practicing Christianity would realize that he was an apostate from Islam.

We do not know what Iran does to ordinary apostates. Bastanipour is not quite an ordinary apostate. Apart from his drug conviction, which will not endear him to the Iranian authorities but is not a relevant factor in deciding whether he has a well-founded fear of *persecution*, his brother has been active in the U.S. in opposition to the Iranian regime. Nor is the death penalty the only sanction grave enough to be deemed persecution within the meaning of the asylum statute, as distinct from mere discrimination or harassment—on the distinction see *id.* at 1163; *Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir.1990); *Desir v. Ilchert*, 840 F.2d 723, 726–27 (9th Cir.1988). Nor must the applicant for asylum prove that he will be persecuted—only that a reasonable person in his shoes would fear persecution. At argument we asked the government's lawyer whether *he* would fear persecution by Iran if he were in Bastanipour's religious and political shoes and he conceded that he would—and even conceded that he was a reasonable man! We accept both concessions. If Bastanipour has converted to Christianity he is guilty of a capital offense under Iranian law. No doubt there are people walking around today in Iran, as in every other country, who have committed a capital offense but have managed to avoid any punishment for it at all. Bastanipour might be one of these lucky ones. But his fear that he will not be is well founded.

So at least it appears to us on the basis of the Board's scanty, illogical, and apparently ill-informed analysis of the record. Perhaps it can do better on remand to explain its position. And it is open to the Board to reject an application for asylum in the exercise of its discretion, provided it offers a reasoned justification of its action that has some support in the record. Meanwhile the stay of deportation entered by this court will remain in force. The Board's order upholding Bastanipour's deportation is vacated and the case remanded to the Board for further proceedings—which may if the Board wishes include the taking of further evidence—consistent with this opinion.

Our order of vacation and remand embraces the denial of section 212(c) relief as well as the denial of asylum. Granted there is an issue whether Bastanipour is eligible for relief under section 212(c). The

statute we mentioned at the outset of this opinion that eliminates the right of asylum for aggravated felons likewise abolishes relief for them under section 212(c) if they served more than five years in prison, Immigration Act of 1990, § 511(a), 8 U.S.C § 1182(c), as Bastanipour did—and this provision of the statute may apply retroactively. The issue of retroactivity was not addressed by the Board, and has not been fully briefed by the parties. As the issue is not on its face an easy one and will become moot if the Board grants Bastanipour asylum, we shall not address it. Should he retain rights under section 212(c), we point out that one of the equities that the Board is required by its own principles to weigh in evaluating an application under the section is the hardship to the person applying for relief. *Zamora–Garcia v. INS, supra,* 737 F.2d at 490–93; *In re Marin, supra,* 16 I & N Dec. at 584–85. Death is a hardship.

VACATED AND REMANDED.