# United States Court of Appeals

## For the First Circuit

No. 03-1117

FRANCK MABIKAS,
Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,
Respondent.

---

No. 03-1961

FRANCK MABIKAS,
Petitioner,

v.

JOHN ASHCROFT, Attorney General,
Respondent.

---

ON PETITIONS FOR REVIEW OF ORDERS OF
THE BOARD OF IMMIGRATION APPEALS

---

Before
Boudin, Chief Judge,
Lourie,* and Lynch, Circuit Judges.

---

Harvey Kaplan with whom Ilana Greenstein, Maureen O'Sullivan, and Jeremiah Friedman were on brief for petitioner.
Anthony W. Norwood with whom Peter D. Keisler and Terri J. Scadron were on brief for respondent.

---

February 19, 2004

---

*Of the Federal Circuit, sitting by designation.

**LOURIE**, **Circuit Judge**.  Franck Mabikas petitions for review of the December 20, 2002 decision of the Board of Immigration Appeals ("BIA"), which dismissed his appeal from the decision of the Immigration Judge ("IJ") denying his applications for asylum and withholding of removal.  Mr. Mabikas also petitions for review of the BIA's June 26, 2003 order denying his motion to reopen its December 20, 2002 decision.

Mabikas is a native and citizen of the Republic of Congo. He legally came to the United States on October 21, 1996 as a visitor.  He was authorized to remain in the United States only for a temporary period not to exceed September 10, 1997.  In April 1997, a civil war broke out in the Congo, and Mabikas lost contact with his family and later learned that his family's home had been destroyed.  He subsequently applied to the United States Immigration and Naturalization Service for political asylum and withholding of removal pursuant to sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231(b)(3) (2000), and for withholding of removal under the Torture Convention, 8 C.F.R. § 208.16 (2004).  He asserted that his father had been employed as either a tax collector or a customs inspector by the government of former President Pascal Lissouba, who was ousted during the civil war, and that he and all of his family members would accordingly be targeted for persecution by the new government of President Denis Sassou-Nguesso.

On March 22, 2000, following a hearing on the merits of his claim, the IJ denied Mabikas's application for asylum and withholding of removal because he was unable to establish that his family's disappearance and the destruction of their house had been "on account of" any of the protected grounds on which asylum can be based. In particular, the IJ concluded that Mabikas lacked a well-founded fear of persecution based on a political opinion, race, religion, or nationality, and that he had not established eligibility for asylum based on a pattern or practice of persecution of persons similarly situated to him as a member of a particular social group.

Mabikas appealed to the BIA. The BIA upheld the IJ's decision and dismissed Mabikas's appeal in its December 20, 2002 decision. According to the BIA, Mabikas had not established that his family's disappearance and the destruction of the family house were related to any of the protected grounds. Further, the BIA held, even if Mabikas had established the necessary nexus, he still would not have been able to demonstrate a well-founded fear of future persecution, because a cease-fire and amnesty had been in place in the Congo at the time of Mabikas's trial and the country appeared to be moving toward peace.

Approximately six months later, Mabikas filed a motion to reopen the BIA's decision, seeking to offer new evidence of a decline in country conditions, including a breakdown of the earlier

-3-

cease-fire and amnesty efforts, as well as evidence that his father had been granted asylum in France in 2001. Observing that evidence of a continuing civil war does not amount to changed country conditions, and finding that Mabikas had not presented any evidence of the basis for his father's refugee status, the BIA declined to reopen its decision.

On appeal, Mabikas contends that the BIA erred in dismissing his motion to reopen his removal proceedings. According to Mabikas, he had new evidence, previously unavailable, that would have established those essential elements of his claim for relief that the BIA had previously found lacking. Specifically, Mabikas alleges that he would have proffered new evidence of the relationship between the destruction of his family's home and disappearance of his family and one of the five protected grounds, as well as evidence of a pattern and practice of abuse of persons connected with the former government, which would tend to show that his fear of future persecution was well-founded. Given that Mabikas's asylum claim was based on his father's activities and not his own, and given that his father was granted asylum, Mabikas argues that evidence of his father's refugee status is clearly material to his claim for relief. Mabikas further argues that, not only is he the son of a former employee of the Lissouba government, but he also is from Lissouba's own home region, a region that routinely has been singled out for attack.

-4-

A motion to reopen before the BIA must be denied unless Mabikas satisfies two threshold requirements: (1) he must "establish 'a prima facie case for the underlying substantive relief sought,'" and (2) he must "introduce 'previously unavailable, material evidence.'" Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (quoting INS v. Abudu, 485 U.S. 94, 104 (1988)). Even if those two requirements are met, the BIA may still exercise its discretion to deny relief. Id.; Abudu, 485 U.S. at 105; see 8 C.F.R. § 1003.2(a) (2004) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.").

In the interest of finality, such motions to reopen are disfavored. Abudu, 485 U.S. at 107. Where, as here, the BIA denied the motion on the ground that "the respondent has not shown that the new evidence is material so as to warrant reopening," our review is for abuse of discretion. Fesseha, 333 F.3d at 20. Mabikas contends that a well-founded fear of persecution could be found from (1) new country condition reports showing the breakdown of cease-fire and amnesty efforts in the Congo and (2) the grant of refugee status to his father in France, which established, he says, a nexus between the political opinion requirement of the statute and his claim of persecution of his family. But the country condition reports do not demonstrate that the recent breakdown would subject tax collectors and customs inspectors–let alone their

children—to persecution. Nor do the reports demonstrate that, even if such persecution occurred, it would be on the basis of political opinion or any other statutory ground. As to the grant of asylum, Mabikas presented no evidence as to the reason why France granted his father asylum, or as to why he had not presented or substantiated this information earlier. There was simply no abuse of discretion.

Mabikas also argues that the BIA erred in affirming the denial of asylum. The government responds that the BIA's decision is supported by substantial evidence. According to the government, there is no precedent holding that "family members of employees of the former government" are members of a protected "social group," and Mabikas has alleged neither that he was ever harmed, threatened, or detained in the Congo, nor that he or any other member of his family was ever a member of a political party. The government points out that the case law is clear that fear of general conditions of civil war or disturbance is not a basis for an award of asylum or withholding of removal. Finally, the government argues that the United States is not bound in any way by France's grant of asylum to Mabikas's father, especially given that Mabikas has presented no evidence of the reasons behind that grant.

We review decisions of the BIA regarding eligibility for asylum and withholding of removal for substantial evidence, reversing only if the asylum applicant demonstrates that the

evidence that he presented was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992). The applicant "bears the burden of establishing eligibility for asylum by proving either past persecution or a well-founded fear of persecution." Velasquez v. Ashcroft, 342 F.2d 55, 58 (1st Cir. 2003). The law requires an asylum seeker to demonstrate that he is a refugee within the meaning of section 101(a)(42)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42)(A) (2000), by adducing evidence that such past persecution or fear of future persecution is due to one of the five grounds enumerated in that provision, namely, race, religion, nationality, membership in a particular social group, or political opinion. Id. § 1158; 8 C.F.R. § 208.13(b)(1),(2) (2003).

We agree with the government that the BIA's decision is supported by substantial evidence. The IJ found that Mabikas's testimony, even if credible, failed to establish that a reasonable person in Mabikas's circumstances would fear persecution on the basis of any of the protected grounds. First, Mabikas did not allege that he was persecuted in the past. Indeed, he has been in the United States since before the civil war in the Congo began. Although he did claim that other family members had been victims of some past persecution, Mabikas did not demonstrate that their persecution was related to any of the protected grounds, as opposed

to being simply a result of living in a place where a civil war was being fought. Second, Mabikas provided no evidence that petty officials such as tax collectors and customs inspectors employed by the former government have been subject to any persecution by the new government, and would therefore constitute a protected social group, let alone that the children of those officials would. Accordingly, nothing in the evidence compels the conclusion that Mabikas proved that he reasonably feared persecution based on any of the five protected grounds.

Just prior to the oral argument in the present appeal, Mabikas sent a letter to the court pursuant to Fed. R. App. P. 28(j), citing El Moraghy v. Ashcroft, 331 F.3d 195 (1st Cir. 2003), in which this court vacated the denial of a Coptic Egyptian's application for asylum and remanded to the BIA for further proceedings. In that case, this court held that the IJ's reasoning was faulty because the IJ appeared to have required "that the country condition reports refer specifically to the petitioner or his family members" before they could be treated as supporting his claim of persecution. Id. at 204. That flaw mattered and undercut our ability to perform judicial review because the IJ made no determination that the petitioner was (or was not) credible, nor did the IJ or BIA make any finding that if what El Moraghy said was true (even if country conditions were not properly presented), then what he presented did not amount to either past persecution or fear

of future persecution. Those latter findings are present in this case, however, and we conclude that El Moraghy is therefore distinguishable from this case. Here, it appears that the IJ merely used country condition reports for a general description of conditions faced by residents of Mabikas's region of the Congo in order to evaluate whether they corroborated Mabikas's contentions. Because that is the proper use of such reports, id. at 204, and because the IJ and BIA made the findings that were lacking in El Moraghy, we conclude that El Moraghy is not relevant to this case.

Mabikas's withholding of removal claims also fails because the "more likely than not" standard for withholding of removal is even more stringent than the "well-founded fear" standard for asylum. Alvarez-Flores v. INS, 909 F.2d 1, 4 (1st Cir. 1990).

After this appeal was filed, Mabikas filed a second motion to reopen his case in the BIA. Mabikas has apparently obtained further evidence of the reasons for the grant of asylum to his father in France, and asserts that the new evidence must be considered by the BIA. Mabikas also filed a motion requesting that this court hold oral argument in abeyance pending the outcome of his motion before the BIA. We denied the latter motion on January 7, 2004, but will nonetheless stay issuance of the mandate in this case for thirty days in order to give the petitioner a chance to press the BIA to resolve the still-pending petition.

We accordingly affirm the denial of the motion to reopen and denial of asylum and withholding of removal. The order permitting voluntary departure stands. In light of the pending second motion to reopen before the BIA, we stay the issuance of the mandate for thirty days.

It is so ordered.