[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 13, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15723
Non-Argument Calendar
_____

Agency No. A79-469-873

LUTHER MARTYN ROGAHANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 13, 2005)**

Before TJOFLAT, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Before us is the petition of Luther Martyn Rogahang, a native and citizen of

Indonesia, seeking review of the Board of Immigration Appeals ("BIA") decision

affirming an Immigration Judge ("IJ") order denying his application for withholding of removal under § 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A).[1]  The specific relief he seeks is the reversal of the decision denying his application for withholding of removal under the INA.[2]

An alien is entitled to withholding of removal under the INA if he can show that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion.  Mendoza v. U.S. Attorney Gen., 327 F.3d, 1283 1287 (11th Cir. 2003); see also INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).  If credible, the alien's testimony "may be

---

[1]  Because Rogahang's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA"), this case is governed by the permanent provisions of the INA, as amended by IIRIRA.  Gonzalez-Oropeza v. U.S. Attorney Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).  Rogahang's petition does not seek review of the BIA's decision denying his application for asylum or protection under the United Nations Convention on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.

[2]  To the extent that the BIA's decision was based on a legal determination, our review is de novo.  D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 817 (11th Cir. 2004).  The BIA's factual determinations are reviewed under the substantial evidence test, and this Court "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation omitted).  We "cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below."  Id. at 1278.  Therefore, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), petition for cert. filed, (No. 04-7944), (U.S. Oct. 28, 2004); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . .").

sufficient to sustain the burden of proof without corroboration." Mendoza, 327 F.3d at 1287 (quoting 8 C.F.R. § 208.16(b)). "An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287. An alien can meet his burden by showing either (1) "past persecution in his country based on a protected ground," in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) "a future threat to his life or freedom on a protected ground in his country." Id.

If the alien demonstrates past persecution, it is presumed that his or her life or freedom would be threatened in the future unless the government can rebut the presumption. 8 C.F.R. § 208.16(b)(1)(i). If, however, the alien does not establish past persecution, he or she bears the burden of showing that it is more likely than not that (1) he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion; and (2) he or she could not avoid a future threat to his or her life or freedom by relocating to another part of his or her country if under all the circumstances it would be reasonable to expect relocation. See 8 C.F.R. § 208.16(b)(2); see also Mendoza, 327 F.3d at 1287 (finding that "[a]n alien who has not shown past persecution, though, may still be entitled to withholding of removal if he can demonstrate a future threat to

3

his life or freedom on a protected ground in his country").  To establish the necessary causal connection between the political opinion and the feared persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion."  Al Najjar, 257 F.3d at 1287 (quotations omitted) (discussing asylum).

Although the INA does not expressly define "persecution," we have said that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  Sepulveda, 401 F.3d at 1231 (quotations omitted).  Generally, conditions which affect the populace as a whole or in large part are insufficient to establish persecution, Al Najjar, 257 F.3d at 1288, and other circuits have held that harassment or discrimination without more does not rise to the level of persecution.  See Ghaly v. I.N.S., 58 F.3d 1425, 1431 (9th Cir. 1995) (holding that "[d]iscrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to "persecution" within the meaning of the Act." ); see also Bastanipour v. I.N.S, 980 F.2d 1129, 1133 (7th Cir. 1992) (distinguishing persecution from mere discrimination or harassment).

In considering the record as a whole, we are satisfied that substantial evidence supports the conclusion that Rogahang did not show that it is more likely

4

than not that he suffered or will suffer future persecution; moreover, the record does not compel a conclusion to the contrary. The evidence established that Rogahang suffered (1) a May 15, 1998, incident during which anti-Chinese comments were directed at him as he was beaten, robbed and his house was burned down, (2) a November 1998 incident during which his Christian church was burned, but he was not physically harmed, and (3) an April 1999, incident during which anti-Chinese comments were directed at him as he was beaten.

Although the evidence could support a finding that he was targeted on account of his Chinese ethnicity and Christian faith, his testimony indicates that, with respect to the May 15 incident, the perpetrators' primary objective may have been to rob him of his wallet and ATM card, as opposed to persecuting him on the basis of his ethnicity or religious beliefs. Likewise, regarding the April 1999 incident, he testified that he was beaten only after he told his attackers that he did not have any money or cigarettes. Again, although the perpetrators displayed a degree of ethnic animus, his testimony supports the IJ's finding that his Chinese ethnicity and religious affiliation were not the motivating force behind the attack. Rather, the evidence supports the IJ's finding that, in the midst of widespread looting and mob violence, the attack was precipitated because the perpetrators wanted his cigarettes and money.

5

The November 1998 church-burning incident, however, is more problematic because neither the IJ nor the BIA discussed it directly, although the IJ did imply that this incident was motivated by discrimination, not persecution. Rogahang, however, was not physically injured during the incident and the record does not compel the conclusion that he was singled out for persecution. As we have recognized, "[n]ot all exceptional treatment is persecution," Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000), and the mere fact that the record may support a contrary conclusion is not enough to justify a reversal. See also Sepulveda, 401 F.3d at 1231 (holding that although the evidence put forth by the petitioner permitted the finding that she was attacked and threatened on account of her political activities, the record did not compel the conclusion that the threats and attacks rose to the level of persecution because of her political involvement). Like Sepulveda, the record in this case may support the conclusion that Rogahang may have been targeted based on a protected ground, but the record does not compel a finding that Roghang was in fact singled out and persecuted because of his religious beliefs so as to justify our reversal of the decisions below.

Although Rogahang's fear that he will be persecuted if he returns to Indonesia appears to be subjectively reasonable, the evidence in the record does not compel a finding that his fear is objectively reasonable. Rather, the evidence

6

tends to establish that it is not objectively reasonable for Rogahang to fear persecution upon his return to Indonesia. Notably, his family members, who are all similarly situated, continue to reside in Indonesia and he presented no evidence that they have been harmed in any way because of their Chinese ethnicity or Christian faith and practice. In sum, the BIA's determination that Rogahang failed to establish a clear probability that he would be persecuted if he returned to Indonesia is supported by substantial evidence, and nothing in the record compels a reversal of that decision.

PETITION DENIED.