**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2050
_____

JUDE SISSINDRIN JEREMIAH,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A087-023-184)
Immigration Judge: Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 20, 2021

Before: MCKEE, SHWARTZ and MATEY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 13, 2022)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jude Sissindrin Jeremiah petitions for review of a final order of removal. For the reasons detailed below, we will deny the petition.

I.

Jeremiah is a Grenadian citizen who entered the United States on a B-2 visitor visa in 1998. He overstayed his visa. In 2019, the Department of Homeland Security charged him with removability under 8 U.S.C. § 1227(a)(1)(B), as a noncitizen present without authorization. Jeremiah applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He alleged a fear of future harm on account of his "American nationality" and his membership in a particular social group (PSG) that he defines as "criminal deportees to Grenada." He also applied to adjust his status based on his citizen-wife's approved I-130 Petition for Alien Relative.

During hearings before an Immigration Judge (IJ), Jeremiah testified that he is married to a United States citizen and has a citizen son. Jeremiah's mother also lives in the United States, as a lawful permanent resident. He told the court that he has no relatives in Grenada and is concerned that he would be unable to find work if forced to return. He stated that he is afraid of his deceased aunt's husband, who was formerly imprisoned for killing his aunt. He is also afraid of his father, who abused him as a child. Jeremiah conceded, however, that he has no reason to believe that his aunt's husband would want to harm him, and he does not know whether his father currently lives in Grenada. Jeremiah was also questioned about his criminal record, which includes

2

convictions for possession of a forged document and criminal possession of a firearm, an arrest for assault, and at least two incidents of domestic violence.

Jeremiah's wife and mother also testified at the hearings. They stated that they would suffer financial and emotional hardship if Jeremiah were removed, and that they would have difficulty managing without him due to their health conditions. With respect to Jeremiah's criminal history, they both told the court that Jeremiah had become more responsible.

The IJ found that Jeremiah was credible and that he had sufficiently corroborated his claims but nonetheless denied all three applications for relief. The IJ first determined that Jeremiah's asylum application was untimely because it had not been filed within one year of his 1998 arrival and none of the exceptions to the filing period applied. Next, the IJ determined that Jeremiah was ineligible for withholding of removal because his 2015 conviction for possession of a firearm constituted a "particularly serious crime." Alternatively, the IJ determined that Jeremiah would not qualify for asylum or withholding of removal based on his proposed PSGs because (a) "criminal deportees" is not a cognizable PSG and (b) he is not an "American national." The IJ also determined that Jeremiah did not have an objectively reasonable fear of future persecution because he had not shown either that he would be singled out for persecution or that there is a pattern or practice of persecution of similarly situated individuals. Next, the IJ denied Jeremiah protection under the CAT, rejecting his fear of "extreme economic disadvantage" and concluding that he had not shown that any harm would likely come to him or that such

3

harm would be with the acquiescence of a public official. Lastly, the IJ determined that although Jeremiah was statutorily eligible to adjust his status, he did not merit relief as a matter of discretion given his extensive criminal history.

Upon review, the Board of Immigration Appeals (BIA or Board) affirmed the IJ's decision and dismissed the appeal. The Board explained that even assuming that Jeremiah's asylum application was timely, and that his application for withholding of removal was not barred by his having committed a particularly serious crime, Jeremiah nonetheless was not eligible for these forms of relief because: (1) his proposed PSG—"criminal deportees to Grenada"—was not cognizable;[1] and (2) he had not shown that he has an objectively reasonable fear of persecution as a criminal deportee. Next, the Board affirmed the IJ's denial of CAT protection, concluding that Jeremiah's fear of "extreme economic disadvantage" did not amount to "severe mental or physical pain and suffering" as contemplated by the regulations. With respect to Jeremiah's application for adjustment of status, the Board found no clear error in the IJ's findings of fact and agreed with the IJ that a favorable exercise of discretion was not warranted.

Jeremiah now petitions for review of the BIA's order.

II.

---

[1] The BIA noted that Jeremiah did not challenge the IJ's determination that he had not established eligibility based on his "American nationality." Therefore, the BIA deemed this theory of relief waived. See In re R-A-M-, 25 I. & N. Dec. 657, 658 n.2 (BIA 2012). To the extent that Jeremiah now challenges the IJ's ruling in this regard, we lack jurisdiction to consider it. See 8 U.S.C. § 1252(d)(1); Nkomo v. Att'y Gen., 986 F.3d 268, 272 (3d Cir. 2021).

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). "Because here the BIA adopted and affirmed the IJ's decisions and orders as well as [conducted] an independent analysis, we review both the IJ's and the BIA's decisions and orders." S.E.R.L. v. Att'y Gen., 894 F.3d 535, 543 (3d Cir. 2018) (quotation marks omitted). We review the BIA's legal determinations de novo and its factual findings for substantial evidence. Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007).

III.

Jeremiah primarily challenges the BIA's determination that his proposed PSG— "criminal deportees to Grenada"—is not cognizable. As the BIA correctly noted, however, we have made clear that "criminal deportees are not recognized as a social group." Toussaint v. Att'y Gen., 455 F.3d 409, 418 (3d Cir. 2006) ("[W]e hardly can conceive that Congress would select criminals as a group warranting special protection in removal cases."); accord Elien v. Ashcroft, 364 F.3d 392, 397 (1st Cir. 2004) (explaining that it would be unsound policy to recognize "criminal deportees" as a PSG because it would "unquestionably create a perverse incentive for Haitians coming to or residing in the United States to commit crimes, thereby immunizing themselves from deportation to Haiti").[2]

---

[2] Jeremiah challenges the agency's PSG analysis on the ground that the BIA and IJ relied in part on the standard set forth in Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018), which has since been vacated. In A-B-, 28 I. & N. Dec. 307, 309 (A.G. 2021), the Attorney General vacated the original A-B- and directed "immigration judges and the Board [to] follow pre-A-B-[ ] precedent." The BIA did not cite A-B- at all—relying

5

Jeremiah raises several additional challenges to the agency's determination that he failed to establish eligibility for asylum or withholding of removal. For example, he argues that the IJ erred in determining that his asylum application was time-barred and that his 2015 conviction for possession of a firearm constituted a "particularly serious crime." As previously noted, however, the BIA did not affirm the IJ's decision on these grounds; rather, the BIA affirmed on the alternative ground that Jeremiah's proposed PSG was not cognizable. Jeremiah also challenges the BIA's determination that he had not shown an objective fear of future persecution, and he further argues that the BIA erroneously imposed a subjective fear requirement. But because the BIA rejected the proposed PSG underlying this claim, Jeremiah's arguments in this regard are irrelevant.

We have considered Jeremiah's remaining arguments and conclude that they are meritless.[3] Accordingly, we will deny the petition for review. The motion for appointment of counsel is denied.

---

instead on Toussaint—and the IJ cited it as simply reaffirming pre-A-B- case law on the criteria comprising PSGs. As a result, the Attorney General's recent decision does not affect this case.

[3] Jeremiah pursued his CAT claim and application for adjustment of status in his opening brief, but he explicitly abandoned these claims in his reply.