# United States Court of Appeals
## For the First Circuit

No. 12-1624

KEVIN FABRICIO CLAROS CANTARERO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Howard and Kayatta, <u>Circuit Judges</u>.

<u>Timothy J. Nutter</u>, with whom <u>Law Office of Timothy J. Nutter</u> was on brief, for petitioner.
<u>Matthew B. George</u>, Trial Attorney, Office of Immigration Litigation, with whom <u>Stuart F. Delery</u>, Acting Assistant Attorney General and <u>Mary Jane Candaux</u>, Assistant Director were on brief, for respondent.

October 31, 2013

**HOWARD, Circuit Judge**. Kevin Fabricio Claros Cantarero ("Claros"), a citizen and native of El Salvador, is an ex-member of a violent criminal street gang based in the United States. Claiming that he would face persecution and torture on account of his former gang membership if repatriated, Claros applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An Immigration Judge ("IJ") denied his applications, and the Board of Immigration Appeals ("BIA") affirmed. We deny his petition for review.

## I.

Claros entered the United States without inspection in 2004, when he was twelve years old. He came to join his parents, who had arrived in 1992 and who became beneficiaries of the Temporary Protected Status program.[1] He has lived here continuously since then.

In April 2010, the Bureau of Immigration and Customs Enforcement ("ICE") took Claros into custody[2] and served him with a Notice to Appear charging him as removable under section

---

[1] Claros's mother filed an application for asylum that has been pending for some years now. Claros tells us that he is listed as a derivative asylum beneficiary in that application. The record makes clear that, although listed as her child, Claros is not listed as a derivative beneficiary because he was not in the United States at the time the application was filed.

[2] Claros was released on bond several weeks later but was taken into ICE custody again in June 2011 following a spate of arrests. He has remained in custody since then.

212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1182(a)(6)(A)(i). Claros conceded removability and applied for asylum, withholding of removal, and relief under the CAT.

At an evidentiary hearing before an IJ, Claros testified that he joined the East Boston arm of the 18th Street gang when he was sixteen years old. The 18th Street gang is a prominent violent criminal gang that is active throughout the United States and Latin America. See Luz E. Nagle, Criminal Gangs in Latin America: The Next Great Threat to Regional Security and Stability?, 14 Tex. Hisp. J.L. & Pol'y 7, 9 (2008). Claros learned that gang membership entailed engaging in a variety of illicit activities, including robberies, thefts, and drug dealing. He received several tattoos identifying him as a member of the 18th Street gang, some of which are prominently displayed.

Two years after joining the gang, Claros became afraid of the violent nature of gang life following a gang-related shooting in the area where he was partying one night. Soon afterward, Claros experienced a religious conversion and decided to leave the gang. Some members of his gang beat him as a result. The leader of the gang warned Claros that membership in the gang was a lifelong commitment and that if he tried to leave, the gang would kill him or members of his family.

Claros testified that he feared persecution in El Salvador on account of his former gang membership. Specifically, he feared reprisals from the Salvadoran branch of the 18th Street gang for his having renounced gang membership, as well as persecution at the hands of rival gangs and police authorities. He would become an easy target, argued Claros, because of his gang tattoos.

The IJ found that Claros had indeed joined the 18th Street gang in the United States and was sincere in his desire to leave the gang. The IJ, however, rejected Claros's argument that, as a former member of the gang, he is a member of a protected social group eligible for asylum or withholding of removal. Claros's claim under the CAT fared no better, as the IJ found no evidence that the government of El Salvador is more likely than not to torture Claros or to acquiesce in his torture.

The BIA agreed with the IJ and dismissed Claros's appeal. It found controlling the principles announced in Matter of E-A-G-, 24 I. & N. Dec. 591 (BIA 2008), where it held that individuals erroneously perceived as gang members cannot constitute a "particular social group" under the INA. As in Matter of E-A-G-, the BIA here was persuaded by the Ninth Circuit's rationale in Arteaga v. Mukasey, 511 F.3d 940, 945-46 (9th Cir. 2007), that Congress could not have intended to offer refugee status based on an alien's membership in a violent criminal street gang in this

country.  The BIA noted that the Seventh Circuit recognized an ex-gang member as a member of a protected social group in <u>Benitez Ramos</u> v. <u>Holder</u>, 589 F.3d 426, 429-30 (7th Cir. 2009), but it was unpersuaded, and concluded that our circuit would not require it to follow suit.

Because Claros failed to establish that the persecution he anticipated in El Salvador was on account of a protected ground, the BIA held that he was ineligible for asylum and, by extension, for withholding of removal.  The BIA also agreed with the IJ that Claros failed to show that he would more likely than not be tortured at the hands of the Salvadoran government, precluding his CAT claim.  This timely appeal followed.

**II.**

Persecution on the basis of "membership in a particular social group" is, along with persecution on the basis of race, religion, nationality, or political opinion, a ground for granting asylum or withholding of removal.  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1), 1231(b)(3).  Claros argues that former members of the 18th Street gang constitute a cognizable particular social group. The BIA rejected his claim on the grounds that membership in a violent criminal street gang cannot serve as the basis for protected-group status under the INA.

Where, as here, the BIA rejects an applicant's proffered social group on legal grounds, its decision is subject to de novo

review.  Elien v. Ashcroft, 364 F.3d 392, 396 (1st Cir. 2004).
Because we are confronted with a question implicating "'an agency's
construction of the statute which it administers,'" we follow
Chevron principles in our review of the BIA's decision.  I.N.S. v.
Aguirre-Aguirre, 526 U.S. 415, 424 (1999) (quoting Chevron, U.S.A.,
Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984)).
Accordingly, we first ask whether "the statute is silent or
ambiguous with respect to the specific issue" before us; if so,
"the question for the court is whether the agency's answer is based
on a permissible construction of the statute."  Chevron, 467 U.S.
at 843.

       The first question need not detain us long.  The INA does
not define the term "particular social group."  The term originated
in the 1967 United Nations Protocol Relating to the Status of
Refugees, 19 U.S.T. 6223, T.I.A.S. No. 6577, with no guidance in
the legislative history as to its meaning.  Sanchez-Trujillo v.
I.N.S., 801 F.2d 1571, 1575 (9th Cir. 1986).  "Because of this
indeterminacy in the drafting process, the United States, along
with other developed countries, has had to struggle to give meaning
to a term that has little pedigree of its own."  Henriquez-Rivas v.
Holder, 707 F.3d 1081, 1095 (9th Cir. 2013) (Kozinski, C.J.,
dissenting); see Fatin v. I.N.S., 12 F.3d 1233, 1238 (3d Cir. 1993)
(noting that meaning of this term is so ambiguous that "[b]oth
courts and commentators have struggled to define [it]," and "[r]ead

-6-

in its broadest literal sense, the phrase is almost completely open-ended"). Accordingly, our role in the process of interpreting this phrase is quite limited. We must uphold the BIA's interpretation, provided it is based on "a permissible construction of the statute." Aquirre-Aquirre, 526 U.S. at 424 (internal quotation marks omitted). We have no doubt that the BIA's decision in this case passes muster under this deferential standard.

The BIA first interpreted the phrase "particular social group" in Matter of Acosta as referring to "a group of persons all of whom share a common, immutable characteristic." 19 I. & N. Dec. 211, 233 (BIA 1985). Recognizing that "a shared past experience" may be sufficient "in some circumstances," the BIA noted that the "particular kind of group characteristic that will qualify under this construction remains to be determined on a case-by-case basis." Id. In subsequent decisions, the BIA elaborated that the proffered characteristic must make the group socially visible and sufficiently particular. See Matter of S-E-G-, 24 I. & N. Dec. 579, 582-83 (BIA 2008); see also Scatambuli v. Holder, 558 F.3d 53, 59-60 (1st Cir. 2009) (examining the contours of the BIA's social visibility test and finding that "it is relevant to the particular social group analysis").

Claros argues that his proposed group falls squarely within the BIA's definition of "particular social group" because the group is both socially visible and sufficiently particular.

The BIA, however, did not rely on its social visibility criteria in rejecting Claros's claim. Indeed, the BIA cited extensively to its decision in Matter of E-A-G-, which rejected a social group composed of "young persons who are perceived to be affiliated with gangs" despite acknowledging that "[g]ang membership does . . . entail some 'social visibility.'" 24 I. & N. Dec. at 595. Rather, the BIA rejected Claros's proposed group on the grounds that recognizing former members of violent criminal gangs as a particular social group would undermine the legislative purpose of the INA. Like the court in Arteaga, the BIA held that it is inconceivable that "'Congress, in offering refugee protection for individuals facing potential persecution through social group status, intended to include violent street gangs who assault people and who traffic in drugs and commit theft.'" Matter of E-A-G-, 24 I. & N. Dec. at 596 (quoting Arteaga, 511 F.3d at 945-46). In short, the BIA held that this type of shared past experience is not a cognizable group characteristic for the purposes of the INA.

We cannot say that the BIA's interpretation is either unreasonable or impermissible. See Arteaga, 511 F.3d at 944–46 (holding that neither current nor former gang members constitute a particular social group); cf. Elien, 364 F.3d at 397 (deferring to the BIA's determination that aliens who commit crimes in the United States are not a protected social group); Bastanipour v. I.N.S., 980 F.2d 1129, 1132 (7th Cir. 1992) (rejecting a comparable

argument that drug traffickers are a recognized group under the INA). The BIA reasonably concluded that, in light of the manifest humanitarian purpose of the INA, Congress did not mean to grant asylum to those whose association with a criminal syndicate has caused them to run into danger. See Arteaga, 511 F.3d at 942 (noting that courts ought not "become misled by expansive and abstract definitions of the term 'social group' to the extent that the application of such a definition fails to comport with the manifest legislative purpose of the law and its language"). Such recognition would reward membership in an organization that undoubtedly wreaks social harm in the streets of our country. It would, moreover, offer an incentive for aliens to join gangs here as a path to legal status. Cf. Elien, 364 F.3d at 397 (noting that recognizing aliens who commit crimes in the United States as a protected social "unquestionably would create a perverse incentive for [aliens] . . . to commit crimes, thereby immunizing themselves from deportation"). Accordingly, the BIA's interpretation merits our deference under Chevron.

Claros contends that the BIA's reasoning is flawed as applied to former gang members. Unlike current gang members, he tells us that he no longer belongs to a "dangerous street gang" precisely because he decided to escape the violent and criminal nature of gang life. He insists that he will be persecuted precisely because he left the gang, and also because he will be

misidentified as a current gang member due to his tattoos. These distinctions do not invalidate the BIA's conclusion that former gang members are not eligible for asylum. A former gang member was still a gang member, and the BIA is permitted to take that into account. That he renounced the gang does not change the fact that Claros is claiming protected status based on his prior gang membership, and he does not deny the violent criminal undertakings of that voluntary association. Although, as Claros points out, the proposed group also shares non-criminal past experiences, namely their initiation rites, tattoos, and status as Spanish-speaking immigrants, the BIA is not required to dissect a group's past experiences and credit only the arguably innocuous ones. The shared past experiences of former members of the 18th Street gang include violence and crime. The BIA's decision that this type of experience precludes recognition of the proposed social group is sound.

Withal, we decline to follow in the footsteps of the Sixth and Seventh Circuits in reversing the BIA on this issue. See Urbina-Mejia v. Holder, 597 F.3d 360, 365-67 (6th Cir. 2010); Benitez Ramos, 589 F.3d at 429-30. The Sixth Circuit did not address the BIA's conclusion that it would be inconsistent with policies inherent in the statute to recognize participation in a criminal syndicate as a basis for refugee protection. See Urbina-Mejia, 597 F.3d at 365-67. Instead, the court relied on the fact

that former gang membership is a characteristic impossible to change, id., and did not consider that immutability, though a necessary predicate, is not sufficient for recognition as a social group. The Seventh Circuit went a step further and rejected the BIA's interpretation on the grounds that Congress had no intention of barring ex-gang members from constituting a particular social group. Benitez Ramos, 589 F.3d at 429-30. Congress evinced this lack of intent, that court concluded, by not naming former gang members when it categorically banned certain individuals from obtaining relief under the INA, such as persecutors and those who have committed a "serious nonpolitical crime." Id. (citing 8 U.S.C. §§ 1158(b)(2)(A), 1231(b)(3)(B)). As the BIA had failed to explain "why the statutory bars . . . should be extended by administrative interpretation to former members of gangs," the court rejected the agency's position that former gang members do not constitute a protected social group. Id. at 430. We think that the statutory scheme provides enough support under a Chevron review to sustain a different answer. Whether an applicant is statutorily barred from obtaining relief under the INA comes into play only after an applicant is deemed to fall within one of the five protected grounds. See 8 U.S.C. § 1158(b)(2)(A). The statutory bars have no bearing on whether an applicant is a member of a particular social group, the basis for the BIA's preclusion of former members of violent criminal gangs. Thus, we disagree that

-11-

Congress's decision not to expressly exclude former gang members is probative of its intent as to whether they are eligible for refugee status as a protected group. It would also seem that the Seventh Circuit's approach would render largely superfluous the term "social group" since, by its reasoning, anyone persecuted for any reason (other than perhaps a personal grudge) might be said to be in such a group.

In sum, we are not persuaded that those courts which have reversed the BIA on this issue have advanced rationales sufficient to overcome Chevron deference. The agency's decision that Claros is not a member of a particular social group must stand.

Claros has one more arrow in his quiver. He challenges the BIA's factual finding that he does not qualify for relief under the CAT. We review the BIA's findings of fact for substantial evidence, accepting those findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). In denying his CAT claim, the BIA agreed with the IJ that Claros presented insufficient evidence that he would more likely than not be tortured at the hands of the Salvadoran government. See Lopez de Hincapie v. Gonzales, 494 F.3d 213, 221 (1st Cir. 2007) ("[T]he infliction of harm does not constitute torture within the meaning of the CAT unless that harm is inflicted by, at the direction of,

or with the acquiescence of government officials."). The record does not compel a different conclusion. In rejecting Claros's argument that the government of El Salvador is unable to protect those who are persecuted by gangs, the IJ credited evidence that the government is actively seeking to curb gang violence. As we said in Mayorga-Vidal v. Holder, that "El Salvador's efforts at managing gang activity have not been completely effectual" does not compel a conclusion that the government has acquiesced in gang activities. 675 F.3d 9, 20 (1st Cir. 2012).

Claros also argues that the police authorities in that country arbitrarily detain suspected gang members and torture them. He provides no specific evidence to support the claim; instead he merely refers to a large swath of the record, listing no fewer than ten country reports and other documentary evidence that span over 150 pages and cover an array of topics. And so he tasks us to search for needles in a haystack. "We have long warned litigators that it is not the obligation of federal courts to 'ferret out and articulate the record evidence considered material to each legal theory advanced on appeal.'" City of Pittsfield v. E.P.A., 614 F.3d 7, 12 (1st Cir. 2010) (quoting Conto v. Concord Hosp., Inc., 265 F.3d 79, 81 (1st Cir. 2001)). Accordingly, we deem the argument waived. See United States v. Candelaria-Silva, 162 F.3d 698, 707-08 (1st Cir. 1998) (finding argument waived where appellant "request[ed] that we conduct 'a reading of the entire

-13-

record with care,'" yet failed to spell out pertinent facts in brief). In any event, substantial evidence supports the BIA's rejection of his claim. Although the record reveals that some police officers have mistreated detainees, the record also supports the conclusion that such individuals were arrested for their actions, expelled from the police force, or otherwise held responsible for their misconduct. Accordingly, we affirm the BIA's decision that Claros is not entitled to relief under the CAT.

## III.

For the aforementioned reasons, we deny Claros's petition for review.