# United States Court of Appeals
## For the First Circuit

No. 24-1741

JOHAN JOSE TAVERAS MARTÍNEZ,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General,[*]

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

Ivan E. Mercado, with whom Mercado & Renegel were on brief, for petitioner.

Deitz P. Lefort, Trial Attorney, Office of Immigration Litigation, Civil Division, with whom John S. Hogan, Assistant Director, Office of Immigration Litigation, and Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, were on brief, for respondent.

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi.

April 17, 2026

**GELPÍ**, **Circuit Judge**.  Johan Jose Taveras Martínez[1] ("Petitioner" or "Mr. Taveras Martínez") appeals the Board of Immigration Appeals's (BIA) reversal of his adjustment of status. He claims that the BIA erred in reversing his adjustment of status because it impermissibly relied on a fact not included in the record in front of the Immigration Judge (IJ).  The government ("Respondent" or the "Government") asserts that the BIA did not engage in impermissible factfinding and instead simply reweighed the evidence before the IJ de novo and found against Petitioner.

For the following reasons, we find Petitioner's claim persuasive and **reverse** and **remand** the case to the BIA.

## I. BACKGROUND

### A. Facts

Mr. Taveras Martínez, a thirty-three-year-old native and citizen of Venezuela, first arrived in the United States in 2001 with his mother, Santa Martínez.  Mr. Taveras Martínez graduated from a vocational high school in Roxbury, Massachusetts, where he met his now-wife, Jennifer Ríos ("Ms. Ríos"), a United States citizen.  The two married in the Dominican Republic in 2008.  After their nuptials, they parted ways; Mr. Taveras Martínez returned to Venezuela and Ms. Ríos returned to the United States.  In 2009,

---

[1] We include accent marks in the spelling of the parties' names where appropriate, even if the parties did not do so themselves.

Ms. Ríos petitioned for an adjustment of her husband's immigration status but later withdrew the application.

On October 29, 2014, Mr. Taveras Martínez reentered the United States on a B1 visa[2] which permitted his lawful stay until August 28, 2015. He has since remained in the United States. Nearly two years after his return, Mr. Taveras Martínez paid $400 to purchase a false Social Security card and birth certificate under the identity of Jose González, a United States citizen from Puerto Rico.[3] He later used these identification documents to obtain a driver's license under the name Jose González. Mr. Taveras Martínez testified that he obtained the documents "to work," and that he used these false documents to gain employment at a carwash, restaurant, and as a DoorDash delivery driver.

---

[2] [B1] non-immigrant visas are designed to permit a short term stay (usually between 30 and 60 days) for business or tourist purposes. To obtain a [B1] visa, an applicant must establish that he or she has a legitimate reason for travel, that the stay is temporary in nature, that the applicant has sufficient means to finance the proposed trip, and that the applicant has sufficient business or family ties in the home country to assure the United States Consular Officer of his or her intent to return.

United States v. Thiongo, 344 F.3d 55, 58 (1st Cir. 2003).

[3] Persons born in the Commonwealth of Puerto Rico after January 13, 1941 are natural-born U.S. citizens. 8 U.S.C. § 1402 (1952); see Gustavo A. Gelpí, Comment on Blocher & Gulati's "Puerto Rico and the Right of Accession", Yale J. Int'l L.F.(2018), https://campuspress.yale.edu/yjil/comment-on-blocher-gulatis-puerto-rico-and-the-right-of-accession/[https://perma.cc/AJ4S-V2FN].

- 4 -

Ms. Ríos and Mr. Taveras Martínez temporarily separated for some time in 2016, though they remained legally married. During this period of separation, on August 29, 2016, the Roxbury Division of the Boston Municipal Court issued a complaint against Mr. Tavarez Martínez, under the name Jose González. The Commonwealth of Massachusetts charged him, under his alias, with assault and battery on Sandy Sanchez, his girlfriend at the time and a member of his household. He was tried and found not guilty by a jury.

On February 22, 2017, Mr. Taveras Martínez was pulled over while driving a car registered to Jose González. When police asked him for identification, he produced a license bearing a false name ("false ID"). The officer grew suspicious of Petitioner and soon thereafter discovered that Mr. Taveras Martínez was using a false identity. Mr. Taveras Martínez initially maintained that Jose González was his real name, but after police showed him a photograph of the legitimate Jose González, he admitted that Jose González was not his legal name. Mr. Taveras Martínez was arrested and charged with various crimes: possessing and uttering a fraudulently obtained Massachusetts driver's license, possessing and uttering a fraudulently obtained Massachusetts vehicle registration, giving a false name to police while operating a vehicle, unlicensed operation of a vehicle, and identity theft. The prosecution later dropped these charges.

## B. Procedural History

On February 23, 2017, just one day after Mr. Taveras Martínez presented a false identification, the Department of Homeland Security (DHS) initiated removal proceedings against him. This removal charge stemmed from Mr. Taveras Martínez overstaying his B1 visa which expired on April 28, 2015. After removal proceedings began, on April 3, 2017, Ms. Ríos, then reunited with her husband, filed a Form I-130, a Petition for Alien Relative, listing Mr. Taveras Martínez as the beneficiary. The I-130 was approved in October 2017, granting him eligibility for adjustment of status.

## 1. The IJ's Decision

On November 2, 2022, Mr. Taveras Martínez filed a Form I-485 for adjustment of status to become a permanent resident. After a hearing on the merits on January 18, 2023, the IJ granted the application for adjustment of status. The IJ found that Mr. Taveras Martínez testified credibly, admitted that he used false documents to obtain work, had no criminal record, and had positive discretionary factors which weighed in his favor, including his marriage to Ms. Ríos, a U.S. citizen, his U.S. citizen child, and his employment. The IJ acknowledged Mr. Taveras Martínez's use of false documents but ultimately determined that evidence of such was insufficient to deny the application.

## 2. The BIA's Decision

DHS appealed the IJ's decision to the BIA. On July 31, 2024, the BIA sustained DHS's appeal. In its order, the BIA noted the positive equities in Petitioner's case, including his marriage to a U.S. citizen, his gainful employment, and his U.S. citizen child. However, the BIA also considered a variety of factors related to Petitioner's "criminal behavior," including "provid[ing] . . . false identification to police in order to avoid criminal prosecution." Ultimately, the BIA found that Mr. Taveras Martínez's "positive equities . . . [did] not outweigh [his] criminal behavior." Thus, it denied his application for adjustment of status and ordered that he be removed to Venezuela.

On August 8, 2024, Mr. Taveras Martínez petitioned this court for review.

## II. Discussion

Mr. Taveras Martínez raises several challenges to the BIA's decision on appeal. First, he contends that the BIA failed to apply the clear error standard of review to the IJ's factual findings regarding Petitioner's credibility, rehabilitation, and criminal history. Second, he claims that the BIA engaged in impermissible de novo factfinding instead of remanding the case to the IJ to make those findings. Specifically, Mr. Taveras Martínez posits that "the BIA improperly made its own findings regarding his . . . intent behind using false documents." Third, he argues

- 7 -

that the BIA failed to properly consider the hardship that removal would impose on his family. And fourth, he asserts that the BIA erred by reweighing discretionary factors de novo instead of reviewing the IJ's decision for clear error.

Respondent opposes Petitioner's claims with three points of its own. First, Respondent argues that this court has no jurisdiction to review the BIA's decision because Petitioner did not articulate a colorable question of law. See 8 U.S.C. § 1252(a)(2)(B)(i); Moreno v. Garland, 51 F.4th 40, 44-45 (1st. Cir 2022). Respondent then contends that the BIA, in its review of the IJ's decision, did not alter factual findings, but instead placed negative weight on different aspects of Petitioner's background, including his acquisition and use of a false ID and arrest for domestic violence. Respondent also claims that the BIA has de novo authority to review the IJ's decisions and may assign "various weights" to the undisputed underlying facts. See Adeyanju v. Garland, 27 F.4th 25, 42 (1st Cir. 2022); 8 C.F.R. § 1003.1(d)(3)(ii). Lastly, Respondent argues that Petitioner's claims of hardship are conclusory and that he never established such claims in his opening brief or before the BIA.

For the following reasons, we hold that the BIA engaged in impermissible factfinding and **reverse** and **remand** to the BIA for proceedings consistent with this opinion. Because we find for

- 8 -

Petitioner on this issue, we decline to address his remaining non-jurisdictional arguments.

## A. Jurisdiction

We begin with a discussion of our jurisdiction. The Government contends that we lack jurisdiction to review the BIA's decision denying Petitioner's adjustment of status application under 8 U.S.C. § 1252(a)(2)(B)(i). Specifically, the Government argues that we are without jurisdiction because Petitioner did not articulate a colorable question of law. We disagree. It is true that we typically lack jurisdiction to consider a petition for review which challenges the BIA's discretionary determination denying adjustment of status. 8 U.S.C. § 1252(a)(2)(B)(i). Yet we retain jurisdiction where the petition raises "constitutional claims or questions of law," id. § 1252(a)(2)(D), or where "the BIA has 'departed from its settled course of adjudication' in the process of making a discretionary determination." Perez-Trujillo v. Garland, 3 F.4th 10, 22 (1st Cir. 2021).

Here, the questions are whether the BIA applied the correct standard of review when reweighing the facts in Petitioner's case and whether the BIA engaged in impermissible factfinding. We have jurisdiction to review them both because whether the BIA applied the relevant standard of review is a question of law. See id. (noting that "we have no jurisdiction to consider a petition for review challenging" the BIA's decision

denying adjustment of status, "except to the extent that the petition raises constitutional claims or questions of law." (citation modified)); Adeyanju, 27 F.4th at 37 (emphasizing that "if the BIA failed to appropriately apply clear-error review . . . then we would retain jurisdiction."); see Peulic v. Garland, 22 F.4th 340, 346 (1st Cir. 2022) (claims that an agency applied the incorrect legal standard raise questions of law over which we have jurisdiction); accord Duncan v. Barr, 919 F.3d 209, 213 (4th Cir. 2019) ("Whether the BIA has applied the proper standard of review is a question of law for purposes of our jurisdiction."); Huang v. Holder, 677 F.3d 130, 135 (2d Cir. 2012) (holding the BIA's failure to apply clear error review is a question of law by which § 1252 provides jurisdiction).

Having confirmed our jurisdiction, we turn to the merits -- applying de novo review. See Santos Garcia v. Garland, 67 F.4th 455, 460 (1st Cir. 2023) (noting our usual practice of reviewing questions of law de novo).

## B. The Role of the BIA

Before we elucidate the reasoning for our decision, we begin with an explanation of the interplay between the IJ and the BIA. "The IJ has the front-line duty of finding the facts." Chen v. Holder, 703 F.3d 17, 22 (1st. Cir. 2022). The BIA, then, does not engage in factfinding "in the course of deciding cases," "[e]xcept for taking administrative notice of commonly known facts

- 10 -

such as current events or the contents of official documents." 8 C.F.R. § 1003.1(d)(3)(iv)(2020). The BIA cannot "engage in de novo review of findings of fact determined by an immigration judge." Adeyanju, 27 F.4th at 33 (citing 8 C.F.R. § 1003.1(d)(3)(i)(2020)).

"Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed [by the BIA] only to determine whether the findings of the immigration judge are clearly erroneous." Id. (citation modified). A clear error standard means that "[a] factfinding may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the factfinder." Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54878-01, 54889 (Aug. 26, 2002) (citing Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)). A finding of clear error must "stink[] like a 5 week old, unrefrigerated, dead fish." Adeyanju, 27 F.4th at 33 (citation modified). Thus, to overturn the IJ, the BIA must be "left with the definite and firm conviction that a mistake has been committed." Id. If the BIA instead believes that further factfinding is needed, it "may remand the proceeding to the immigration judge or, as appropriate, to DHS." 8 C.F.R. § 1003.1(d)(3)(iv)(2020). With the relationship between the BIA

and IJ explained, we turn to a discussion of the merits to determine whether the BIA engaged in impermissible factfinding.

## C. Whether the BIA Engaged in De Novo Factfinding

Mr. Taveras Martínez claims that, during its re-weighing of the equities in his case, the BIA made impermissible findings as to his intent behind using the false ID. Petitioner maintains that this action by the BIA was improper because the IJ did not find any such fact in its review. Respondent replies that Petitioner "conflates the Board's de novo evaluation of the significance of these undisputed facts for actual factual findings." For the following reasons, we agree with Petitioner.

In reviewing Petitioner's case, the BIA's job "was to explicate why the finding was illogical or implausible, not substitute its own factual judgments." Adeyanju, 27 F.4th at 45 (citation modified). Again, "the BIA is prohibited from engaging in factfinding in the course of deciding appeals." Id. at 32 (citation modified). Here, the BIA exceeded its authority by finding that Petitioner used a false ID "to avoid criminal prosecution" -- a specific intent that was not an undisputed fact in the record before the IJ. See App. 7 ("However, we find significant the fact that the respondent also provided his false identification to police in order to avoid criminal prosecution.") (emphasis added); See generally Garcia-Botello v. Bondi, 168 F.4th 1245, 1267 (10th Cir. 2026) (discussing caselaw recognizing that

- 12 -

"intent . . . is always a case-specific determination for the factfinder (the IJ)"). To support its proposition that Petitioner sought to avoid criminal prosecution through presentation of a false ID, the BIA cited the IJ's decision, the transcript of the hearing before the IJ, and a mitigation letter from Petitioner's defense counsel to the state district attorney's office requesting pre-trial probation to resolve the case surrounding his 2017 arrest. But none of these cited documents contain information which states, either explicitly or implicitly, that Petitioner used a false ID to avoid criminal prosecution. The record only shows that Petitioner procured a false ID to obtain work. When asked on direct examination about why Petitioner used a false name, he replied "I used that name to work" -- a point he repeated on cross-examination. And, remember, the IJ found that he testified credibly. Nothing else in the record indicates that he used a false ID to avoid prosecution. That Mr. Taveras Martínez had already been criminally prosecuted (for assault and battery) as "Jose González" before the false ID incident contradicts the BIA's characterization -- that he used his false ID to escape "criminal prosecution."

Further, the BIA did not permissibly "pull[] from the undisputed record additional underlying facts not spotted by the IJ" but instead relied on facts not supported by the record. Adeyanju, 27 F. 4th at 40. While the BIA has discretion to analyze

- 13 -

the evidence presented in front of the IJ, it may not make findings of facts that were never in front of the IJ. Largely relying on the characterization it ascribed to Petitioner's use of a false ID, the BIA determined that Petitioner's use of a false ID was a "significant adverse factor." If the BIA felt the IJ needed to revisit the intent behind Petitioner's use of false ID, it could have remanded the case for further factfinding on that issue to the IJ. See id. 27 at 45.

> So, we find Petitioner's argument
>
> convincing where, as here, the BIA has decided to reverse the IJ, not on the basis of having found clear error, but instead based on disputed material facts with respect to which the IJ reached no resolution, see 8 C.F.R. § 1003.1(d)(3)(i), and which the BIA analyzed in such a way as to constitute independent factfinding.

Padmore, 609 F.3d at 68. We find no evidence in the record which suggests that the IJ found, for a fact, that Petitioner intended to avoid criminal prosecution through his use of a false ID.

By adding the characterization that Petitioner presented a false ID to officers to avoid prosecution, the BIA extended beyond its limitation of "de novo review of questions of law, discretion, and judgment." Id. It is an error of law for the BIA to ignore its own regulations and engage in impermissible factfinding. Barros v. Garland, 31 F.4th 51, 57 (1st Cir. 2022). The clear error standard does not restrict the BIA's authority to

"analyze[] the evidence that [was] presented in the immigration court," but does constrain it from "supplement[ing] the record by considering new evidence." Adeyanju, 27 F.4th at 46 (quoting Rotinsulu v. Mukasey, 515 F.3d 68, 73 (1st Cir. 2008)). Therefore, we find that the BIA conducted additional factfinding beyond that of the IJ and acted beyond the scope of its authority, committing clear legal error and thus abusing its discretion. See generally 8 C.F.R. § 1003.1(d)(3)(i)(2020); Aponte, 610 F.3d at 4.

Upon remand, the BIA should weigh the facts in Petitioner's case without impermissible additions. We therefore reverse the BIA's decision denying Petitioner's adjustment of status and remand to the BIA for proceedings consistent with this opinion.

### III. Conclusion

For the reasons stated above, we **reverse** and **remand** for proceedings consistent with this opinion.